```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
SAFIC ALCAN & CIE, PT AGRO JAYA          :
PERDANA,                                 :
                                         :       07 Civ. 3977 (JSR)
               Plaintiffs,               :
                                         :       MEMORANDUM ORDER
          -v-                            :
                                         :
M/T KASCO, STARFISH ENTERPRISES,         :
INC.,                                    :
                                         :
               Defendants.               :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Plaintiffs Safic Alcan & Cie ("Safic") and PT Agro Jaya Perdana brought this action against defendant Starfish Enterprises, Inc. ("Starfish") to recover $400,000 in damages to plaintiffs' palm oil while aboard Starfish's vessel, the M/T Kasco. The parties agree that the charter party governing their transaction provides that this claim should be arbitrated, but dispute whether the arbitration should go forward in New York or in London. By letter-briefs dated April 30, 2008, the parties applied to the Court to interpret the charter party in this respect. For the reasons set forth below, the Court agrees with Starfish that the charter party designates London for arbitration of all claims and hereby refers this case to arbitration in that forum.

In March 2006, Starfish's broker, Konstantinos Moutzouridis of the Greek brokerage IMS, and Safic's broker, Jacques Fourisson of the French brokerage Barry Rogliano Salles ("BRS"), negotiated the terms of a charter party to govern a shipment of palm oil by Safic. See Declaration of Konstantinos Moutzouridis ("Moutzouridis Decl.")

¶¶ 3, 10, 14.  As is customary in such negotiations, the brokers agreed not only on the primary terms of the charter, including the quantity and type of cargo and the rate, but also on a standard "form" charter party, here, the "Vegoilvoy" form, to provide general terms governing the transaction.  Id. ¶ 16, 20; Declaration of Jacques Fourisson ("Fourisson Decl.") ¶ 5.  The Vegoilvoy form provides that any dispute arising from the charter party shall be arbitrated in New York under the procedures of the United States Arbitration Act.  See Vegoilvoy Charter Party, Part II ¶ 31, Ex. 3 to Moutzouridis Decl.

By email dated March 20, 2006, Fourisson transmitted to Moutzouridis some thirty-two "Additional Clauses" that Safic wanted to include in the charter party.  See Ex. 2 to Moutzouridis Decl. Clause 11 of the Additional Clauses addressed the issue of arbitration, providing:

> Any dispute arising from or in connection with this C/P shall be referred to arbitration in London.  Owners and Charterers shall each appoint an arbitrator experienced in the shipping business.  English law shall govern this C/P and all aspects of the arbitration.

Safic Terms 2003 (effective 17th February 2003) ("Safic Additional Clauses"), attachment to Ex. 2 to Moutzouridis Decl.  Starfish had no objection to Clause 11's designation of London as the seat of arbitration, but did object to two other aspects of that clause. Specifically, Starfish wanted a panel of three arbitrators, rather than the two for which Clause 11 provided, and Starfish wanted to permit "self-appointment," i.e., the process whereby a claimant

appoints the respondent's arbitrator if the respondent fails timely to respond to a demand for arbitration. See Moutzouridis Decl. ¶ 19, 35-40. Moutzouridis, on behalf of Starfish, proposed these modifications to Fourisson, who had no objection; the parties therefore agreed to amend Clause 11, utilizing for this purpose another widely recognized charter form, called "Asbatankvoy," which provides for a three-person panel and contains self-appointment language. Id. ¶ 41, 43. The Asbatankvoy charter form does not designate a situs of arbitration, however, providing for arbitration either in New York or London depending on the parties' specification. See Asbatankvoy Tanker Voyage Charter Party, Part II, ¶ 24, Ex. 5 to Letter from Plaintiff's Counsel dated April 30, 2008 ("Pl. Letter"). In addition, the parties agreed that any claims below $100,000 would be handled under the London small claims procedure, a matter not referenced in the Asbatankvoy form. Moutzouridis Decl. ¶ 44.

In accordance with general practice, the parties memorialized their final agreement in a "fixture recap," which incorporated all of the negotiated and agreed terms of the charter. Id. ¶ 11. On March 22, 2006, Fourisson transmitted this document, called the "Kasco Recap," to Moutzouridis. See Email Containing Kasco Recap, Ex. 1 to Moutzouridis Decl. The Kasco Recap first sets forth the specific terms of the voyage (regarding the vessel, the itinerary, the cargo, etc.), then invokes the Vegoilvoy Charter Party, and then adds: "CHRTS TERMS DATED 17 FEB 2003 (1 . . . 32) AMENDED AS FOLLOWS." The "CHRTS TERMS DATED 17 FEB 2003 (1 . . . 32)" refers to the Safic

Additional Clauses (which, as noted, were thirty-two clauses effective February 17, 2003). What follows thereafter are amendments to certain of those clauses. Specifically, as to Clause 11, over which, as noted above, there had been some negotiation, the Kasco Recap states as follows:

> CL 11 : ARBITRATION CLAUSE - AMENDED AS FOLLOWS :
> ' ' ASBATANKVOY ARB CLAUSE TO APPLY AS PER ARBT ACT 1950 AS AMENDED 1996, DISPUTES UPTO USD 100.000. - SHALL BE REFERED [sic] TO ARB IN LONDON WITH SMALL CLAIMS PROCEDURE AS PER LMAA RULES.' '

Kasco Recap at 3, Ex. 1 to Moutzouridis Decl.

The final contract between the parties consists of the Kasco Recap plus those outside documents that the Kasco Recap incorporates by reference. See Great Circle Lines, Ltd. v. Matheson & Co., 681 F.2d 121, 125 (2d Cir. 1982); Andolina Shipping Ltd. v. TBS Eurolines Ltd., 84 F. Supp. 2d 527, 529-530 (S.D.N.Y. 2000). Accordingly, the Court looks first to the plain language of the Recap. See Seabury Constr. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 68 (2d Cir. 2002) ("Where [a] contract is unambiguous, courts must effectuate its plain language."). Here, that language and the incorporated documents support Starfish's view that the parties designated London for the arbitration of all claims.

By first invoking the "Vegoilvoy C/P," next referring to the February 17, 2003 Safic Additional Clauses "AMENDED AS FOLLOWS," and finally listing certain of the numbered Safic Additional Clauses along with the agreed-upon modifications thereto, the Kasco Recap can only be read to (a) incorporate the Vegoilvoy standard provisions except for those on which the Safic Additional Clauses speak more

4

specifically, and (b) with respect to those Additional Clauses, adopt them as set forth originally by Safic <u>except</u> as noted in the Recap itself.  As to Clause 11, the Kasco Recap amends that clause in three respects: first, by adopting the procedures set forth in the Asbatankvoy form ("ASBATANKVOY ARB CLAUSE TO APPLY"); second, by designating English arbitral law as the law to govern those proceedings ("AS PER ARBT ACT 1950 AS AMENDED 1996," a reference to the English Arbitration Act of 1996, 1996 c. 23 (Eng.)); and third, by further specifying that disputes up to $100,000 shall be arbitrated in London pursuant to the special small claims procedures available there ("DISPUTES UPTO USD 100.000. - SHALL BE REFERED [sic] TO ARB IN LONDON WITH SMALL CLAIMS PROCEDURE AS PER LMAA RULES").[1]

    In short, the Recap's initial invocation of Vegoilvoy selects New York as a baseline, but its subsequent incorporation of the Safic

---

[1] Safic argues that the Kasco Recap Arbitration Clause should be read to modify the Vegoilvoy form directly, and notes that the Clause does not specifically say that it deletes or replaces the Vegoilvoy arbitration provision, nor does it explicitly designate London arbitration for all claims.  Safic argues that the Clause therefore leaves intact the Vegoilvoy form's provision for arbitration in New York.  This argument misses a critical step, however, which is the Recap's adoption of the Safic Additional Clauses "AMENDED AS FOLLOWS."  Thus, the amendment to Clause 11 that follows modifies the Safic Additional Clause 11 – which does specifically provide for London arbitration – not the Vegoilvoy form.
    Alternatively, Safic argues that the Recap should be read to delete Safic Additional Clause 11 altogether and replace it – thus negating Safic Additional Clause 11's reference to London arbitration.  Yet the Recap states explicitly that it adopts Safic Additional Clause 11 as "amended," not that it "deletes and replaces it."  By contrast, that same portion of the Recap <u>does</u> "delete . . . and replace" a different clause, Clause 30.  <u>See</u> Kasco Recap at 3 ("CL 30 : DELETE FIRST PARAGRAPH AND REPLACE BY . . . .").

Additional Clauses replaces that baseline with a specific provision for London; the further amendments address only <u>procedures</u>, not location, and so do not affect the selection of London. Moreover, the designation of English arbitral law strongly suggests, if it does not absolutely dictate, that the intended arbitral forum was London.[2]

Even if the Kasco Recap were ambiguous with respect to the location of arbitration for claims over $100,000, the extrinsic evidence of the parties' dealings confirm for the Court that the contract specifies London. <u>Cf.</u> <u>Topps Co. v. Cadbury Stani S.A.I.C.</u>, 526 F.3d 63, 68 (2d Cir. 2008) (holding that where contract language contains ambiguities, a court may still grant summary judgment if available extrinsic evidence is "capable of only one interpretation" or otherwise fails to support "a resolution of these ambiguities in favor of the nonmoving party's case."). Here, the parties essentially agree that the course of negotiation proceeded as described above: the brokers agreed to the Vegoilvoy form, selecting

---

[2] At oral argument, Safic's counsel insisted that it would not be unreasonable to specify that English arbitral law applies to an arbitration to take place in the United States, as the English Arbitration Act of 1996, 1996 c. 23 (Eng.), applies to arbitrations outside the United Kingdom. <u>See</u> Tr. 5/27/08. Following oral argument, Starfish submitted a letter-brief arguing that Safic's counsel had misrepresented the extra-territorial scope of the English Arbitration Act. <u>See</u> Letter from Defense Counsel, dated June 10, 2008, at 1-2 (citing Arbitration Act of 1996, § I(2)(1) ("The provisions of this Part apply where the seat of the arbitration is in England and Wales or Northern Ireland.")). If Starfish's interpretation of the Act is correct, that fact strongly supports Starfish's argument that by selecting the English Arbitration Act the parties intended arbitration of all claims to occur in the United Kingdom. As Safic has had no opportunity to respond to that submission, however, the Court does not - and indeed, has no need to - rely on it in reaching its result here.

New York; Safic then proposed to amend that form by, among other things, selecting London and providing for certain other procedures (e.g., a two-person panel); and Starfish <u>accepted</u> Safic's selection of London, disagreeing only as to the procedures, which the parties continued to negotiate by reference to the Asbatankvoy form.  <u>See</u> Moutzouridis Decl. ¶¶ 18-20, 33-44, 50-51; Fourisson Decl. ¶¶ 5-7; Reply Declaration of Konstantinos Moutzouridis ("Moutzouridis Reply Decl.) ¶ 4 ("[T]here is no real dispute between the brokers as to the progression of the negotiations.").  Both parties agree that once Safic presented Starfish with the Additional Clauses, they did not further discuss the issue of location at all.  <u>See</u> Moutzouridis Decl. ¶ 45 (stating that there was never any discussion of changing the location of arbitration from London to New York); Fourisson Decl. ¶ 9 (stating that Fourisson and Moutzouridis "did not discuss this clause in any detail" nor did they discuss "the effect of the final clause as drafted").  In other words, following Safic's presentation of its additional clauses, there was a meeting of the parties' minds with respect to arbitration in London, and the parties never specifically agreed to change that mutual understanding.[3]  Like the plain language

---

[3] Safic claims that the interpretation it urges – that only small claims were to be arbitrated in London, with large claims to be arbitrated in New York – is the one its broker possessed at the time the Recap was finalized.  <u>See</u> Fourisson Decl. ¶¶ 8, 10.  But Mr. Fourisson's subjective understanding at that time cannot trump what the Court believes to be the clear result of the contract's language and the parties' negotiating process.
     The parties also made much, during oral argument and in their pre- and post-oral argument submissions, of an email exchange between the brokers this past January, well after the voyage forming the basis of this lawsuit.  <u>See</u> Ex. 6 to Moutzouridis Reply Decl.; Moutzouridis Reply Decl. ¶¶ 17-23;

7

of the Kasco Recap, therefore, the course of the parties' negotiations supports the conclusion that the Recap designates London as the arbitral forum for all claims.

    For the foregoing reasons, plaintiffs' claims are hereby referred to arbitration in London. The Clerk of the Court is directed to place this case on the suspense calendar pending resolution of that arbitration.

    SO ORDERED.

Dated: New York, NY
       July 16, 2008

                                      JED S. RAKOFF, U.S.D.J.

---

Fourisson Reply Decl. ¶ 9; Moutzouridis Second Reply Decl. ¶¶ 7-26; Tr. 5/27/08. However, the Court has had no need to consider any post-fixture communications between the brokers to interpret the meaning of the Kasco Recap.
    Finally, the Court takes no account of either party's argument with respect to the timeliness or untimeliness of any arbitration claim hereinafter filed in London. See, e.g., Tr. 5/27/08. That issue is immaterial to the application before the Court.